**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONIQUE GABLE, | ) | |
| individually, and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 26-cv-02932 |
| | ) | |
| v. | ) | Honorable Matthew F. Kennelly |
| | ) | |
| NEWLINE HOLDINGS, LLC, | ) | |
| NEWLINE FINANCIAL, LLC, and RED | ) | JURY TRIAL DEMANDED |
| CHERRY PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Monique Gable ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through her undersigned counsel, hereby makes the following allegations against Newline Holdings, LLC, Newline Financial, LLC, and Red Cherry Properties, LLC (collectively, "Defendants"), and their subsidiaries and affiliates, upon personal knowledge and based upon investigation made by her counsel, as follows:

**NATURE OF THE ACTION**

1.      The Fifth Amendment to the U.S. Constitution prohibits an entity engaged in state action from taking private property without paying just compensation to the property's owner.

2.      For decades, private entities, often referred to as "Tax Buyers," such as Defendants, and their associated entities, have violated this prohibition.

3.      Defendants divest Illinois property owners who fail to pay property taxes of the monetary value of the property over and above the amount owed in taxes, penalties, interest and

costs (the property's "Surplus Value").

4.      The unconstitutional divestiture stems from the aftermath of the foreclosure process under the Illinois Property Tax Code, 35 ILCS 200/1-1, *et seq*. (the "Property Tax Code"). First, a property owner, like Plaintiff, falls behind in her payment of property taxes. The county in which the property sits then places a tax lien on the property for the amount owed in taxes, penalties, interest and costs (the "Tax Amount"). A Tax Buyer then purchases the Tax Amount from the county. With the purchase of the Tax Amount, the Tax Buyer also purchases the rights to collect the back taxes plus continuing interest charges on the property, in addition to the ability to pay and tack on subsequent year taxes, to the county's claimed tax lien on the property. If the property owner does not timely reimburse the Tax Buyer for the Tax Amount, plus generous statutory interest and Tax Buyer costs (a process called "redeeming"), the Property Tax Code permits the Tax Buyer to foreclose, obtain a deed to the property, and obtain an order from the court to evict the property owner. The Tax Buyer acquires the entire fair market value of the property in exchange for the amount for which the Tax Buyer purchased the tax lien, usually the Tax Amount.[1] The divested property owner receives no compensation for the Surplus Value of the property in excess of the Tax Amount.

5.      The U.S. Supreme Court recently held, unanimously, that this practice of retaining the Surplus Value beyond the delinquent Tax Amount in connection with property taken to satisfy a tax lien violates the Fifth Amendment's Takings Clause. *Tyler v. Hennepin County*, 598 U.S. 631, 647 (2023). The Court unambiguously declared that an entity may "not use the toehold of the tax debt to confiscate more property than was due" without violating the Fifth Amendment. *Id.*

---

[1] In this case, Newline Holdings was the original owner and holder of the issued Certificate No. 15-0003258 for the Tax Amount purchased at Cook County's Annual Tax Sale. Newline Holdings bought Plaintiff's Tax Amount from Cook County for $6,707.73 and subsequently assigned ownership of the certificate of purchase to Red Cherry Properties, an affiliate of Newline Holdings, as set forth below.

("The taxpayer must render unto Caesar what is Caesar's *but no more*.") (emphasis added).

6.     As the Supreme Court held in *Tyler*, Tax Buyers, such as Defendants, may not constitutionally deprive a property owner of the Surplus Value of their property without paying just compensation. *Id.* Defendants cannot avoid liability for their actions by claiming that Cook County took Plaintiff's Property, and that Defendants merely purchased what the County had already taken. Rather, when Defendants purchased the tax lien to Plaintiff's Property, Defendants "also obtained something the county never had—the right to obtain a tax deed and, with it, Plaintiff's equitable interest in the property." *Continental Resources v. Fair*, 317 Neb. 391, 413 (2024). Defendants had no right to purchase a right to obtain Plaintiff's and putative Class Members' property unless they provided "just compensation" on issuance of a tax deed. U.S. Const., Amend. V.

7.     This action is not a challenge to the structure or administration of Cook County's property tax sale system. That challenge is the subject of *Kidd v. Pappas*, No. 22-CV-7061 (N.D. Ill.), in which the same court that presides over this action recently found Cook County liable under 42 U.S.C. § 1983 for failing to compensate property owners whose Surplus Value was taken through the tax sale process. *Kidd v. Pappas*, No. 22-CV-7061, 2026 WL 1278273 (N.D. Ill. May 11, 2026). This action targets a distinct wrong by distinct actors: the independent decision of private Tax Buyers, i.e., Defendants, to retain the Surplus Value of Plaintiff's and putative Class Members' properties for their own benefit, without paying just compensation, after using state judicial machinery to acquire title. Defendants here are the entities who received the Surplus Value and who themselves refused to return it. Their liability is independent of, and complementary to, the County's liability established in *Kidd*: the County is responsible for authorizing a system that failed to ensure compensation; Defendants are responsible for executing the retention.

**PARTIES**

8. Plaintiff Monique Gable is a natural person and a citizen of the State of Arizona. Plaintiff is the former owner of residential property located at 7 W. 148th Street in Dolton, Illinois (the "Property"). Plaintiff purchased the Property in November 2015. At all times relevant hereto, the Property had a fair market value substantially in excess of any Tax Amounts due and was owned outright by Plaintiff. There were no mortgages, leases, or encumbrances on the Property.

9. Defendant Newline Holdings, LLC ("Newline Holdings") is a Delaware limited liability company registered with the Illinois Secretary of State and conducting business in Cook County, Illinois. Newline Holdings' principal place of business is 2012 Corporate Lane, Suite 108, Naperville, Illinois 60563. Newline Holdings is managed by Defendant Newline Financial, LLC. The individual signatory for Newline Holdings on Illinois Secretary of State filings for 2024 and 2025 is Jordan Gross, who signs in his capacity as managing director of Newline Financial, LLC.

10. Defendant Newline Financial, LLC ("Newline Financial") is a Delaware limited liability company registered with the Illinois Secretary of State. Newline Financial serves as the manager of Newline Holdings, and, through its subsidiary Red Pine Properties, LLC, as the indirect manager of Defendant Red Cherry Properties, LLC and several other deed-holding subsidiaries, including Green Mountain Properties, LLC, Yellow Walnut Properties, LLC, White Cedar Properties, LLC, and Blue Ocean 21-1, LLC. Jordan Gross is the sole individual signatory for Newline Financial. Newline Financial was previously managed by Affinity Investments, LLC, a Delaware entity, and more recently by EOS Capital Holdings, LLC. At all relevant times, Jordan Gross controlled Newline Financial and, through it, the entirety of the enterprise described herein.

11. Defendant Red Cherry Properties, LLC ("Red Cherry Properties") is a Delaware limited liability company registered with the Illinois Secretary of State and conducting business in

4

Cook County, Illinois. At the time the tax deed to Plaintiff's Property was issued, Red Cherry Properties' registered address was 2012 Corporate Lane, Suite 108, Naperville, Illinois 60563, which is the same address as Newline Holdings and listed for Newline Financial on its 2024 Illinois Annual Report. Red Cherry Properties is managed by Red Pine Properties, LLC. The individual signatory for Red Cherry Properties on Illinois Secretary of State filings for 2024 and 2025 is Jordan Gross, the same individual who signs for Newline Holdings and Newline Financial. In 2025, Red Cherry Properties' registered address migrated to 2640 White Oak Circle, Attn: Box 8719, Aurora, Illinois 60502, which is the same address simultaneously adopted by Newline Financial on its 2025 Annual Report.

12. Defendants Newline Holdings, Newline Financial, and Red Cherry Properties, along with Newline Financial's other direct and indirect subsidiaries (Red Pine Properties, LLC, Green Mountain Properties, LLC, Yellow Walnut Properties, LLC, White Cedar Properties, LLC, and Blue Ocean 21-1, LLC) are herein referred to collectively as the "Newline Enterprise." The Newline Enterprise consists of a two-tier operating structure: Newline Holdings and/or Blue Ocean 21-1 function as certificate-purchasing vehicles at the front end; Red Cherry Properties, Green Mountain Properties, Yellow Walnut Properties, and White Cedar Properties function as deed-receiving vehicles at the back end; Red Pine Properties serves as the intermediate management layer directing the deed-receiving subsidiaries; and Newline Financial serves as the apex management entity directing the enterprise as a whole. Jordan Gross controls and coordinates the operations of every entity in the Newline Enterprise as the sole individual signatory across all annual reports. At all relevant times, the Newline Enterprise operated as a single integrated enterprise for the purpose of acquiring tax certificates from Cook County and using the tax deed process to capture the Surplus Value in targeted properties.

5

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts federal constitutional claims for relief under the Takings Clause of the Fifth Amendment and under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. *See also* ECF No. 1.

14.     This Court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of the same operative facts as Plaintiff's federal constitutional claims and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also* ECF No. 1.

15.      Plaintiff originally filed her Complaint in the Circuit Court of Cook County, Illinois, Chancery Division, which is located within the Eastern Division of the Northern District of Illinois. Defendants removed the Complaint to this Court. Venue is proper in this Court because "it is the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## FACTUAL ALLEGATIONS

**A.     Illinois' Tax Foreclosure Process**

16.     Like many states, Illinois allows counties to tax real property. This case involves what happens *after* the taxation process is completed and Surplus Value remains after the county is paid in full for all delinquent taxes, interest, penalties, and fees, and the real property owner is divested of their property.

17.     Under the Property Tax Code, Illinois counties may sell delinquent property taxes to third-party investors called Tax Buyers. A Tax Buyer may purchase from the county the rights

to collect the back taxes, and all Tax Amounts, from the property's owner, plus interest, and to foreclose upon and take all value in such property owner's property, including the Surplus Value in their property. 35 ILCS 200/21-195; 21-215; 21-240; 21-250; 35 ILCS 200/22-40(a); 22-60; 22-65.

18.     Upon paying the county the Tax Amount owed on the property, the Tax Buyer is granted a tax lien on the property. 35 ILCS 200/21-230; 21-235; 21-250.

19.     Absent an extension, residential property owners have 2.5 years from the date of the tax sale to redeem their property. 35 ILCS 200/21-350.

20.     If the property owner does not redeem in full and on time, the Tax Buyer may petition the court to order the County Clerk to execute a tax deed naming the Tax Buyer as the legal owner of the property. 35 ILCS 200/22-40.

21.     The Tax Buyer then accepts and records the certified deed from the County Clerk. As the new owner of the property, the Tax Buyer may petition the court to evict the former owner. 35 ILCS 200/22-40; 35 ILCS 200/22-60; 35 ILCS 200/22-65.[2]

22.     At every stage of this process, the Tax Buyer and the State act jointly; neither can accomplish the taking alone. First, the County—not the Tax Buyer—identifies delinquent properties, applies for the judgment and order of sale, and conducts and supervises the annual tax sale through the County Treasurer. 35 ILCS 200/21-15; 200/21-150; 200/21-160; 200/19-35; 200/21-190. The Tax Buyer cannot purchase a certificate at a tax sale the County has not conducted.

---

[2] *See also* Housing Action Illinois, *Racial Disparities and Cook County Tax Sale Evictions*, at 1 (Nov. 2021), *available at* https://housingactionil.org/downloads/Policy/Racial-Disparities-and-Cook-County-Tax-Sale-Evictions.pdf (explaining the process by which, "within 30 months, the tax purchaser can ask the court for a tax deed and move to evict the current residents.").

7

23. Second, the certificate of purchase that founds the Tax Buyer's rights is issued by the County Clerk—a state official—and derives its legal force entirely from the State's statutory authorization. 35 ILCS 200/21-250; 200/21-260. The Tax Buyer possesses no right to a tax deed that is not first created and conferred by the State.

24. Third, the Tax Buyer's petition for a tax deed must be filed in the Circuit Court of the county in which the property is located, and the court—a state tribunal—must be satisfied that all statutory prerequisites for deed issuance have been met before it may order the deed to issue. 35 ILCS 200/22-30; 200/22-5 through 200/22-25. The Tax Buyer cannot obtain a deed by unilateral demand; it must persuade a state court.

25. Fourth, notice to the property owner and other interested parties, i.e., the process by which the property owner's right to contest the taking is framed and limited, is prescribed by statute and supervised by the Circuit Court. 35 ILCS 200/22-10 through 200/22-25.

26. Fifth, the tax deed itself is issued and certified by the County Clerk under the authority of the Circuit Court's order, bears the County Clerk's official seal, and transfers title to the Tax Buyer only because the State authorizes that transfer through the County Clerk's official act. 35 ILCS 200/22-40; 200/22-55. The Tax Buyer cannot take title to a property without the County Clerk executing and certifying the deed. 35 ILCS 200/22-60; 200/22-65.

27. Sixth, the order of possession that evicts the former property owner from their home is a court order entered by the Circuit Court at the Tax Buyer's petition and backed by the coercive power of the state judiciary.

28. From the opening bid at the County's tax sale to the sheriff's enforcement of the possession order, every step that culminates in the Tax Buyer's acquisition of Surplus Value is accomplished jointly by the Tax Buyer and a state official acting under state statutory authority.

The Tax Buyer brings the demand and the capital; the State provides the legal machinery, the court orders, the official seals, and the coercive power without which no property owner's title could be extinguished and no Surplus Value could be captured.

29. As the Supreme Court of New Jersey observed of a nearly identical system, private lienholders and local governments "act jointly" because the lienholders "on their own . . . cannot facilitate the collection of delinquent property taxes" nor "transfer title through a tax foreclosure," and neither can the County accomplish those functions through a Tax Buyer without the Tax Buyer's affirmative participation in the statutory scheme the State created. *257-261 20th Ave., Realty, LLC v. Roberto*, 259 N.J. 417, 445 (2025). That structural interdependence, which is mandated by the Property Tax Code at each of the steps identified above, satisfies the requirements for state action with respect to each member of the Newline Enterprise that participated in the acquisition of Plaintiff's and putative Class Members' properties.

30. The many problems with the current Illinois property tax sale system have been called out publicly and by county officials for decades.

31. For example, a 1976 Illinois Legislative-Investigative Commission found Illinois' practice of "total forfeiture" as described herein to be needlessly harsh and recommended replacing it with a "sale-surplus system" that would not strip former property owners of the Surplus Value. This was in large part because, the Commission determined, there was "no relation between the threat of total forfeiture and the rate of tax collection." Replacing the Tax Buyer system with a sale-surplus system would, the Commission concluded, "simply eliminate the possibility of a tax buyer reaping an unearned windfall at the expense of those who can least afford it."[3]

---

[3] Illinois-Legislative Investigating Commission, Annual Report of 1976: Delinquent Tax Sales: A Report to the Illinois General Assembly, p. 24 (1976)
https://www.ojp.gov/pdffiles1/Digitization/39864NCJRS.pdf.

32.     More recently, Madison County's State's Attorney introduced a motion in a tax foreclosure proceeding out of concern that the County, and/or the Tax Buyer, could be exposed to liability for an unconstitutional taking. The State's Attorney explained in his motion: "[T]he tax buyer here is asking the County to extinguish a property interest without accounting for equity. The tax buyer is attempting to affect an unconstitutional taking. Under *Tyler*, the soon-to-be-ex-owner is entitled to just compensation for his home equity . . ." *As-Is Properties v. Egelhodd*, Case No. 2023TX000061 (Ill. 3d Jud. Dist., *Motion* Nov. 9, 2023).

33.     Indeed, Illinois property owners are better off having their properties foreclosed by a lender than seized by a Tax Buyer in connection with unpaid property taxes. In instances involving a foreclosure by a lender, Illinois law requires excess sale proceeds beyond those needed to pay off the mortgage loan to be returned to the borrower-owner. *See* 735 ILCS 5/15-1512.

34.     Despite these contrary recommendations and legislation, the non-adoption of the total forfeiture system by the vast majority of taxing authorities in other states, the Supreme Court's unanimous ruling in *Tyler*, and the subsequent legislative and judicial abandonment of the total forfeiture systems in states where they had been in place prior to *Tyler*,[4] Tax Buyers, including Defendants, have continued to take advantage of the outdated and unconstitutional practices purportedly permitted under the Illinois Property Tax Code and persist in their unjust, unconstitutional practices.

35.     This Court has concluded, in *Kidd*, that the obligation to pay just compensation for property taken through the Cook County tax sale process is not a new obligation imposed by *Tyler*, but "the preexisting obligation governmental entities have to pay just compensation for taken

---

[4] *See, e.g*., South Dakota H.B. 1090; Maine L.D. 101; Wisconsin A.B. 969, Idaho H.B. 444; *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022); *Rafaeli v. Oakland County*, 505 Mich. 429 (2020).

property under the Takings Clause, which has applied to local governments for over one hundred twenty-five years." *Kidd*, 2026 WL 1278273, at *6 (citing *Chi., B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897)). That preexisting obligation applied with equal force to private Tax Buyers who used state machinery to acquire Surplus Value. Defendants' failure to compensate Plaintiff and the Class is therefore not a product of legal uncertainty; it is a willful choice to retain value that the law has required them to return for well over a century.

36. Tax Buyers like Defendants often reap windfall gains as a result of their unconstitutional retention of Plaintiff's and the putative Class Members' Surplus Value. The scope of that harm in Cook County is established by judicial findings entered by this Court. In *Kidd*, this Court conducted a bench trial in April 2026 and entered findings of fact establishing the following: over the period from 2015 through 2022, an average of 769 tax deeds were issued each year in Cook County transferring property from owners to Tax Buyers; during that same period, an average of only 40 indemnity awards were issued to displaced property owners each year, meaning that approximately 95 percent of Cook County property owners who had their property taken through the issuance of a tax deed to a Tax Buyer received no compensation whatsoever for their lost equity; and the Cook County Indemnity Fund, which the Property Tax Code establishes as the mechanism for compensating displaced property owners, carried over $22 million in outstanding judgments against a fund balance of approximately $3.9 million—a condition of structural insolvency that the Court found to constitute a matter of common knowledge within the County. *Kidd*, 2026 WL 1278273, at *2–3, 5.

37. After the Supreme Court's unanimous decision in *Tyler* condemning these practices, Defendants should have refunded the Surplus Value that they stole from Plaintiff and the putative Class Members. Defendants have willfully not done so, thus continuing the violation

of Plaintiff's rights.

38. Defendants continue their practice and policy of taking and retaining Surplus Value from Plaintiff and the putative Class Members.

**B.     The Newline Enterprise and Its Unified Method of Operation**

39. Newline Holdings, Newline Financial, and Red Cherry Properties, along with Newline Financial's direct and indirect subsidiaries, constitute a single integrated enterprise whose component entities perform coordinated, interdependent roles in a unified scheme to acquire properties through the Cook County tax sale process and to retain the Surplus Value in those properties without compensating prior owners.

40. Newline Holdings serves as the "front-end" purchasing vehicle for the Newline Enterprise. Newline Holdings attends Cook County's annual tax sales and purchases tax certificates—rights to collect unpaid taxes plus interest—on targeted residential properties. Newline Holdings uses the certificate of purchase, and its statutory power to petition the Circuit Court for issuance of a tax deed, as the mechanism through which the Newline Enterprise acquires properties.

41. Red Cherry Properties, as well as Green Mountain Properties, Yellow Walnut Properties, White Cedar Properties, and Blue Ocean 21-1, all serve as the "back-end" title-holding vehicles for the Newline Enterprise. Rather than taking the tax deed in Newline Holdings' name, the Newline Enterprise transfers the certificate of purchase from Newline Holdings to Red Cherry Properties and the other subsidiaries at the moment the deed proceeding matures, so that the tax deed issues in that subsidiary's name. This bifurcated structure is not a bona fide arm's-length assignment to an independent third party; it is an intra-enterprise transfer between entities sharing the same management, the same post office box, the same principal address, and the same

individual signatory.

42.     The common management and control linking Newline Holdings and Red Cherry Properties is demonstrated by the following facts, each separately alleged on the basis of public records, and collectively demonstrating that the entities are operated as a single enterprise under the direction of Jordan Gross.

43.     First, Jordan Gross is the sole individual signatory on the Illinois Secretary of State annual reports for Newline Holdings, Newline Financial, Red Pine Properties, Red Cherry Properties, and each of the other deed-holding subsidiaries. No other individual appears as a signatory on any of these entities' annual reports.

44.     Second, Newline Financial's 2024 Illinois Annual Report, filed November 5, 2024, lists P.O. Box 8719, Carol Stream, Illinois 60197-8719 as the address for Affinity Investments, LLC, Newline Financial's then-manager. The tax deed issued to Red Cherry Properties for Plaintiff's Property identifies Red Cherry Properties' grantee address as P.O. Box 8719, Carol Stream, Illinois 60197—an identical post office box.

45.     Third, the 2024 and 2025 Illinois Annual Reports for Newline Financial, Red Cherry Properties, and the other deed-holding subsidiaries all list the same principal office addresses in sequence: first 2012 Corporate Lane, Suite 108, Naperville, Illinois 60563, and then 2640 White Oak Circle, Suite C, Attn: Box 8719, Aurora, Illinois 60502. These entities migrated addresses in lockstep, consistent with operation from a single physical location under unified management.

46.     The agents who executed the transfer documents in the tax deed proceedings underlying this action are Newline representatives acting in a dual capacity. Jordan Gross endorsed the assignment of the certificate of purchase from Newline Holdings to Red Cherry Properties both

as the individual authorized to act on behalf of Newline Holdings (the assignor) and, by virtue of his role at Newline Financial and Red Pine Properties, as the individual with management authority over Red Cherry Properties (the assignee). Bryan Hughes, who served as in-house counsel for Newline Financial until at least March 2026 and whose ARDC registration lists Newline Servicing, LLC at P.O. Box 8719, Carol Stream, Illinois as his registered address, filed the motion on behalf of Newline Holdings to substitute Red Cherry Properties as Petitioner in the tax deed proceedings underlying this action. Hughes also executed the Grantor/Grantee Affidavit—a required filing under 35 ILCS 200/31-25—on behalf of Red Cherry Properties as grantee of the tax deed to Plaintiff's property. Newline representatives thus served as the legal agents for the entities on both sides of the transfer of the certificate of purchase from Newline Holdings to Red Cherry Properties.

47.     The pattern of intra-enterprise assignments is not limited to Plaintiff's Property. Based on public Circuit Court and Recorder of Deeds records, Jordan Gross endorsed the assignment of the certificate of purchase from Newline Holdings to Red Cherry Properties in at least ten matters filed in the Cook County Circuit Court in 2024 and 2025, with the actual number of assignments to other deed-holding subsidiaries being substantially higher based on the volume of subsidiary-captioned cases visible in the Clerk of Circuit Court's public docket. Each intra-enterprise assignment follows an identical template: Newline Holdings purchases the tax lien certificate of purchase, prosecutes the deed proceeding, and transfers the certificate of purchase to a subsidiary at the moment of deed issuance.

48.     The consideration for the intra-enterprise assignment, if any exists, flows entirely within the Newline Enterprise. Because the assignor (Newline Holdings) and assignee (deed-holding subsidiary) are commonly controlled, the assignment cannot be characterized as an independent transaction. The economic benefit of the deed—the Surplus Value in the targeted

14

property—accrues to the Newline Enterprise as a whole, regardless of which shell entity nominally holds title.

49.     Green Mountain Properties, Yellow Walnut Properties, White Cedar Properties, and Blue Ocean 21-1 are registered, active, and managed by Red Pine Properties and Jordan Gross on the same terms as Red Cherry Properties. Each was admitted to Illinois within months of the others and maintains the same principal addresses. Each is available to the Newline Enterprise as a deed-receiving vehicle. The coordinated, simultaneous formation of Red Cherry Properties, Green Mountain Properties, Yellow Walnut Properties, and White Cedar Properties on or about January 21, 2022 is consistent with a deliberate enterprise design: creating a battery of interchangeable, identically-managed shell entities to receive tax deeds and thereby multiply the enterprise's capacity to capture Surplus Value while diffusing title across nominally separate legal persons. Blue Ocean 21-1, operating since at least 2017, appears to be a predecessor or parallel vehicle that pre-dates the 2022 formation event and has been incorporated into the same management structure.

50.     The Newline Enterprise's use of multiple interchangeable deed-receiving subsidiaries, each commonly managed and commonly addressed but nominally distinct, is not an incidental feature of legitimate corporate organization. It is the mechanism by which the enterprise avoids aggregation of its activities and thereby attempts to minimize litigation exposure, frustrate class-wide discovery, and prevent any single plaintiff from tracing the full scope of the enterprise's Surplus Value capture. This corporate structure is designed to interpose a nominally distinct entity between Newline Holdings' acquisition activity and title receipt for the purpose of insulating Newline Holdings from constitutional accountability: Newline Holdings purchases the certificate, prosecutes the deed proceeding for years, directs the transfer to its own affiliate at the moment the

15

deed ripens, and then disclaims liability because it never held title. That result would sanction a transparent device to circumvent *Tyler v. Hennepin County*, 598 U.S. 631 (2023), and would permit any tax certificate purchaser to unlawfully immunize itself from takings liability by the simple expedient of routing the final deed to a subsidiary.

**C.      Defendants' Acquisition of Plaintiff's Property**

51.      In 2015, Plaintiff failed to pay her property taxes on her property located at 7 W. 148th Street, Dolton, Illinois. She did not abandon or intend to abandon the Property, which she had purchased in November 2015 and which was owned free of any mortgage, lease, or encumbrance.

52.      On April 4, 2017, Newline Holdings, acting as the certificate-purchasing vehicle of the Newline Enterprise, purchased the 2015 general real estate taxes on Plaintiff's Property at Cook County's annual tax sale. The property tax debt was $6,707.73. After interest and fees, the total amount of the sale was $8,954.73. The Cook County Clerk subsequently issued Certificate No. 15-0003258 to Newline Holdings. At all times from issuance of the certificate through November 18, 2024, Newline Holdings held the legal right to petition for a tax deed and, through that petition, to acquire full title to the Property and thereby capture the entirety of Plaintiff's equity.

53.      Plaintiff received no effective notice of the tax deed proceedings and did not redeem the property. The redemption period expired on December 10, 2019, based in substantial part on Newline Holdings' admitted error in the service address.

54.      On July 10, 2019, Newline Holdings filed a petition in Cook County Circuit Court for an order directing the County Clerk to issue a tax deed pursuant to Certificate No. 15-0003258. On January 3, 2020, Newline Holdings advanced the proceedings by filing an application for an

order directing issuance of tax deed. Newline Holdings thus occupied the position of petitioner for over seven years from the date of the tax sale through November 18, 2024.

55. On October 21, 2024, acting through Jordan Gross, Newline Holdings endorsed and executed an assignment of Certificate No. 15-0003258 to Red Cherry Properties. On November 18, 2024, the Circuit Court granted Newline Holdings' motion to substitute Red Cherry Properties as petitioner, entered an order directing the County Clerk to issue a tax deed to Red Cherry Properties, and the County Clerk issued Red Cherry Properties a tax deed to the Property.

56. The assignment of the certificate from Newline Holdings to Red Cherry Properties was not an arm's-length sale to an independent third party. Newline Holdings transferred the certificate to Red Cherry Properties at the direction of Jordan Gross, who possessed authority over both entities through his management role at Newline Financial and Red Pine Properties. Only nominal, if any, consideration was paid; the value transferred—the right to a tax deed on a property with a 2024 assessed fair market value of $208,000.00—remained within the Newline Enterprise. The assignment was executed in furtherance of the Newline Enterprise's established method of capturing Surplus Value while interposing a nominally separate deed-holding entity to defeat liability.

57. On February 24, 2025, Red Cherry Properties recorded the tax deed to the Property with the Cook County Recorder of Deeds. As of that date, the Property had a fair market value of at least $208,000.00 against a total tax obligation of $8,954.73, yielding a Surplus Value of approximately $199,045.27 that Plaintiff lost without compensation.

58. Throughout the tax deed proceedings, Newline Holdings made continuous, affirmative use of state judicial machinery to extinguish Plaintiff's property rights and secure the conditions necessary for issuance of the tax deed. The tax deed that Red Cherry Properties recorded

on February 24, 2025 is the direct product of Newline Holdings' seven-year prosecution of those Circuit Court proceedings. Without Newline Holdings' continuous invocation of state judicial authority, no tax deed could have issued.

**D.      Defendants' Unlawful Retention of Plaintiff's Surplus Value**

59.      When Red Cherry Properties recorded the tax deed to the Property on February 24, 2025, Red Cherry Properties effectively took for itself Plaintiff's Surplus Value in the Property without paying just compensation.

60.      On February 11, 2025, Red Cherry Properties moved for an order granting it possession of the Property, which the court granted on September 12, 2025.

61.      As of February 24, 2025, when Red Cherry Properties took for itself Plaintiff's Surplus Value in the Property, the Property retained its fair market value of at least $208,000.00.

62.      As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiff has lost all rights to her Property, including the right to use, live in and dispose of it.

63.      Plaintiff has received no compensation for her Surplus Value, the difference between the Tax Amount and the value of the Property.[5] Defendants' failure to compensate Plaintiff fairly and promptly upon the loss of her rights in her Property and the Surplus Value in it has impeded and continues to impede her ability to secure subsequent housing.

64.      Defendants, acting under color of state law, through their business model, operations, policies and customs, and pursuant to the Property Tax Code, 35 ILCS 200/21-1, *et seq.*, violated Plaintiff's and the putative Class Members' rights by, among other things, seizing and retaining Surplus Value in their properties in excess of the Tax Amounts due, without reasonable, certain, and adequate just compensation as required by the Fifth Amendment as

---

[5] Plaintiff alleges that the Surplus Value she is owed can be calculated by subtracting the Tax Amount owed on the Property from the Fair Market Value of the property at the time of foreclosure.

interpreted by *Tyler* and *Cherokee Nation v. Southern Kansas Railway Co.*, 135 U.S. 641, 659 (1890).

65.     Defendants' constitutional violation consists not merely of their participation in the tax sale process, but of their independent and ongoing decision to retain Plaintiff's and putative Class Members' Surplus Value without compensation. This Court has held that the constitutional deprivation in Cook County tax sale cases is "not the state-imposed processes for conducting a tax sale, but the refusal of the seller—the County—to compensate owners for their lost equity after the sale is completed." *Kidd v. Pappas*, No. 22-CV-7061, 2025 WL 3507374, at *16 (N.D. Ill. Dec. 8, 2025). The same principle applies with equal force to private Tax Buyers like Defendants. Defendants' refusal to compensate Plaintiff and the putative Class is willful, continuing, and independent of any obligation or compulsion arising from the Property Tax Code.

E.     **Newline Enterprise Liability**

66.     **Joint Enterprise.** Newline Holdings, Newline Financial, Red Cherry Properties, and Newline Financial's other direct and indirect subsidiaries pursued a common scheme with a common purpose—to acquire properties through the tax sale process and to capture Surplus Value without compensating prior owners—pursuant to a common plan that was reflected in a uniform operational template: Newline Holdings purchases at tax sale, prosecutes the deed proceeding, and transfers the certificate at the moment of deed issuance to a subsidiary. The combination of common management (Jordan Gross), common registered addresses, common personnel executing transfers (Bryan Hughes), and a pattern of at least ten documented assignments to Red Cherry Properties during 2024–2025 establishes a common design with concert of action. The pursuit of this scheme constitutes a joint enterprise for which all members are jointly and severally liable for the resulting deprivation of Plaintiff's constitutional rights and property interests.

19

67. The joint enterprise extends to all Newline Enterprise members. Red Pine Properties serves as the management vehicle through which Newline Financial directs the deed-receiving subsidiaries; its role in the enterprise is structural and supervisory rather than directly operational, but it is a knowing participant in the enterprise's unified scheme. Red Cherry Properties, Green Mountain Properties, Yellow Walnut Properties, White Cedar Properties, and Blue Ocean 21-1 each participate in the enterprise by serving as the designated title-holding vehicle for one or more intra-enterprise certificate assignments, receiving the economic benefit—Surplus Value—that the enterprise extracts from each targeted property owner. Their participation is not passive; each entity files and prosecutes tax deed proceedings in the Circuit Court, using the coercive power of judicial process to eliminate redemption rights and secure title. Each is therefore a co-participant in the joint enterprise and jointly and severally liable for the resulting deprivation of Plaintiff's and putative Class Members' constitutional rights and property interests.

68. **Agency.** At all relevant times, Red Cherry Properties and the other deed-holding subsidiaries acted as the agents of Newline Holdings and/or Newline Financial in connection with the receipt of tax deeds on properties for which Newline Holdings held certificates of purchase. Jordan Gross, on behalf of Newline Financial, controlled both Newline Holdings (as its manager) and Red Cherry Properties and the other deed-holding subsidiaries (as the indirect manager through Red Pine Properties). Bryan Hughes, Newline's in-house counsel, executed the transfer documents and accepted the tax deed on behalf of the deed-holding subsidiaries. The subsidiaries, including Red Cherry Properties, had no independent management decision-making or independent legal representation separate from the Newline Enterprise's personnel in connection with the deed transactions. The subsidiaries' receipt of deeds was thus an act of a Newline Enterprise agent, and Newline Holdings and/or Newline Financial are liable as principals for the

subsidiaries' receipt of deeds and retention of the Surplus Value.

69.     **Alter Ego and Veil-Piercing.** In the alternative, the deed-holding subsidiaries, including Red Cherry Properties, are the alter egos of Newline Holdings and Newline Financial. The indicia of alter ego are established by the following, alleged in combination: (a) common ownership and control through Jordan Gross, the sole individual signatory for every entity in the Newline Enterprise; (b) identical principal office addresses across the enterprise; (c) shared personnel performing legal functions across entity lines, including Bryan Hughes; (d) shared post office box address P.O. Box 8719, Carol Stream, Illinois, appearing on both Newline Financial's annual report and Red Cherry Properties' deed-grantee address; (e) an operational structure in which each entity lacks a separable business purpose apart from its assigned role within the Newline Enterprise's tax-certificate acquisition scheme; and (f) a pattern of coordinated intra-enterprise transfers designed to capture Surplus Value on behalf of the enterprise as a whole while placing formal title in a subsidiary. The use of subsidiaries' separate forms to accept deeds was a transparent mechanism to shield Newline Holdings and Newline Financial from liability and would, if unaddressed, perpetuate a fraud on Plaintiff and the Class. The Court should pierce the corporate veil and hold Newline Holdings and Newline Financial jointly liable for the deed-holding subsidiaries' retention of Plaintiff's and the putative Class Members' Surplus Value.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of the following Class:

> All persons or entities who owned or were the beneficial owners of real property in the State of Illinois and (1) whose property was subject to a tax deed taking by one or more members of the Newline Enterprise, defined as Newline Holdings, LLC, Red Cherry Properties, LLC, Green Mountain Properties, LLC, Yellow Walnut Properties, LLC, White Cedar Properties, LLC, Blue Ocean 21-1, LLC, Red Pine Properties, LLC, and Newline Financial, LLC, and (2) who have not been

21

compensated for the fair market value of their property in excess of the amount owed in taxes, penalties, interest and costs.

71. Excluded from the class are: (i) any judge or magistrate presiding over this case and their family members; (ii) Defendants and their subsidiaries, successors, predecessors, and any entity in which Defendants had a controlling interest; (iii) anyone who properly executes and files a timely request to be excluded from any Class from which exclusion is permitted; (iv) anyone whose claims have been adjudicated on the merits or released; (v) Defendants' counsel and Plaintiff's counsel; and (vi) legal representatives, successors, and assigns of any such excluded persons.

72. **Numerosity**. The Class consists of at least 40 members. Joining them all would be impracticable, and the individuals in question can be identified through Defendants' own records and public filings. The Tax Amount paid for Plaintiff's and Class Members' properties may also be established from Defendants' own records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

73. **Commonality / Predominance**. Common questions of law and fact exist as to the members of the Class which predominate over questions affecting only individual members, if any. These questions include, without limitation:

   A. Whether the involuntary transfer and retention of Plaintiff's and the Class Members' properties to Tax Buyers without promptly remitting to them or compensating them for the Surplus Value of their property constitutes an uncompensated taking of private property under either or both the United States and Illinois Constitutions;

   B. Whether the involuntary transfer and retention of Plaintiff's and the Class Members' properties to Tax Buyers without promptly remitting to them or compensating them for the Surplus Value of their property constitutes an excessive fine under the United States Constitution;

22

C.      Whether Plaintiff and Class Members whose properties are taken through the Property Tax Code's tax sale process are entitled to receive adequate, prompt, and just compensation for their Surplus Value, *see Tyler*, 598 U.S. at 647 and *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 189 (2019), and how and when such must be provided;

D.      Whether Defendants' pursuit of the tax deed to and retention of the Surplus Value of Plaintiff's and Class Members' Property constitute state action; and

E.      Whether declaratory and injunctive relief is appropriate.

74.      **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest adverse to the interests of the Class. Plaintiff is committed to prosecuting this action and has retained competent, experienced counsel who has had substantial success prosecuting complex class action cases.

75.      **Typicality.** Plaintiff's claims are typical of those of the Class she seeks to represent. Plaintiff has the same interests and has suffered from the same unlawful conduct as the Class Members. Plaintiff presents no claims that are unique to herself, and there are no defenses available to the Defendants that are unique to Plaintiff. Plaintiff can prove the elements of her claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

76.      **Superiority**. A class action is an appropriate method for the fair and efficient adjudication of this controversy and superior to other methods. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Pursuing individual litigation would be unduly burdensome to Class Members, especially given that many of those Class Members are impoverished and in no position to hire counsel to sue Defendants. Class treatment is also preferable because of the time

23

and expense required for courts to address each individual case and the risks of having inconsistent adjudications on the important issues raised herein. Overall, a class action would present far fewer management difficulties than a slew of individual lawsuits, as well as the benefits of a single adjudication and comprehensive supervision by a single court.

## CAUSES OF ACTION

77.     All causes of action herein are pleaded in the alternative.

78.     Plaintiff seeks compensatory monetary relief, including but not limited to just compensation, and declaratory relief relating to Defendants' failure to provide compensation to persons who lose their Surplus Value as alleged herein and whose rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Illinois Constitution were violated.

### COUNT I
### TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION
### U.S. CONST. AMEND. V, XIV, and 42 U.S.C. § 1983

79.     The allegations contained in the preceding paragraphs are incorporated and repeated in this paragraph and this Count is brought by Plaintiff individually and on behalf of the Class against the Defendants. Newline Holdings and Newline Financial are liable on this Count both directly, as co-participants in the joint enterprise that deprived Plaintiff and the Class of their Surplus Value, and vicariously, as principals for the acts of their agent Red Cherry Properties and/or as the alter egos of Red Cherry Properties.

80.     As the Supreme Court held in *Tyler*, an entity engaged in state action effectuates an uncompensated (and thus unconstitutional) taking when it keeps the Surplus Value after enforcing a tax lien.

81.     The Fifth Amendment to the United States Constitution provides that private

property shall not "be taken for public use, without just compensation." The Fifth Amendment is applicable to the States through the Fourteenth Amendment. Defendants' violations of rights secured by the Fifth and Fourteenth Amendments are actionable pursuant to 42 U.S.C. § 1983, and as direct claims brought under those Amendments. Plaintiff's claims are brought directly and under § 1983.

82.     Private entities, such as Defendants, violate the right to just compensation when they engage in state action. Under the public function test, "[a] private actor may be considered a state actor when it exercises a function 'traditionally exclusively reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019), *quoting Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). "[W]hile the Court has found that very few functions meet this test, it has suggested that both tax collection and powers traditionally associated with sovereignty, such as eminent domain, might qualify." *Continental Resources*, 317 Neb. at 408 (internal quotations omitted).

83.     Additionally, "when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 486 (1988).

84.     Additionally, state action exists under the joint-action test where the deprivation is "caused by the exercise of some right or privilege created by the State" and the private party "may be fairly said to be a state actor" because it "acted together with or has obtained significant aid from state officials." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

85.     Two state supreme courts have considered cases filed by a plaintiff against a private entity engaged in the unconstitutional deprivation and retention of the Surplus Value of their property since the United States Supreme Court decided *Tyler*. *Continental Resources*, 317 Neb.

25

at 408–09; *257-261 20th Ave., Realty, LLC v. Roberto*, 259 N.J. 417, 427–28 (2025) ("*20th Avenue*"). Both courts determined that those private entities engage in state action when they acquire the Surplus Value of foreclosed property under property tax systems nearly identical to the Illinois Property Tax Code. *See* Neb. Rev. Stat. § 77-1801, *et seq*.; N.J.S.A. 54:5-1 – 54:5-137.

86. Applying the principles enunciated in *Tyler*, *Manhattan Cmty. Access Corp.*, *Jackson*, and *Tulsa Professional Collection Services*, the Supreme Court of Nebraska has twice held that Tax Buyers "can be fairly characterized as state actor[s] when [they] obtain[] a tax deed to [a] property . . . us[ing] [] state procedures and state assistance[.]" *Continental Resources*, 317 Neb. at 408–09; *Nieveen v. Tax 106*, 317 Neb. 425, 433 (2024) ("the tax certificate holder engaged in state action and thus can be liable to pay just compensation").

87. Likewise, in *20th Avenue*, the Supreme Court of New Jersey held that "because private lienholders act jointly with local governments under [New Jersey's Tax System] to perform a traditional public function—the collection of taxes—they may be considered state actors." 259 N.J. at 427–28. Relying on *Continental Resources*, the Court explained:

> Local government and private lienholders have different roles under the statute, which assigns various responsibilities to each . . . Lienholders are incentivized to purchase the certificates by a generous maximum interest rate. They determine whether and when to start an action to foreclose and, as part of that process, take the necessary steps to foreclose on delinquent properties. Lienholders on their own, however, cannot facilitate the collection of delinquent property taxes or create an alternate stream of revenue for the town under [New Jersey's Tax System]; nor can they transfer title through a tax foreclosure. Local government and private lienholders act jointly in that regard. And their interdependent actions flow from the statutory scheme the State created[].
>
> By working in tandem under that framework, local government, as the Nebraska Supreme Court has observed, effectively delegate[s] to . . . private investors the common governmental function of seizing properties to satisfy a tax debt.

*Id.* at 445.

88. Defendants' pursuit of the tax deed to and retention of the Surplus Value of

Plaintiff's Property constitute state action. *Manhattan Cmty. Access Corp.*, 587 U.S. at 804; *Lugar*, 457 U.S. at 937; *Continental Resources*, 317 Neb. at 407; *Nieveen*, 317 Neb. at 433; *20th Avenue*, 259 N.J. at 427–28.

89.     Every right Defendants exercised in acquiring Plaintiff's and putative Class Members' Properties was created by the State. The certificate of purchase is a statutory instrument that the County Clerk issues under 35 ILCS 200/21-260; it confers no rights except those the Property Tax Code creates and the County Clerk's issuance activates. The right to petition for a tax deed is conferred by 35 ILCS 200/22-30 and exists only because the State created it. The tax deed itself is a state instrument bearing the County Clerk's official seal, issued pursuant to a court order under 35 ILCS 200/22-40 and 22-55, and it transfers title only because the State authorizes that transfer. Defendants' ability to acquire and retain Plaintiff's Surplus Value was, at every step, "caused by the exercise of [a] right or privilege created by the State." *Lugar*, 457 U.S. at 937.

90.     Defendants obtain significant aid from state officials at each stage of the process: the County conducts and supervises the tax sale pursuant to 35 ILCS 200/21-90; the County Clerk issues certificates of purchase pursuant to 35 ILCS 200/21-260; the Circuit Court accepts the petition for a tax deed, supervises service of notice on Plaintiff and putative Class Members, enters orders governing the proceedings, and ultimately orders the County Clerk to issue the tax deed pursuant to 35 ILCS 200/22-40; the County Clerk executes and certifies the tax deed and delivers it pursuant to that court order; and the Circuit Court enters the order of possession directing Plaintiff's and putative Class Members' evictions. At no point in this sequence could Defendants have acted without the affirmative assistance of a state official.

91.     Defendants and Cook County are not merely parallel actors in a tax collection system; they are joint actors in a unified process that neither can complete without the other, and

27

whose interdependence the State itself designed and the Property Tax Code codifies.

92.     Defendants have not afforded Plaintiff any mechanism or process by which to seek or obtain the Surplus Value of her Property from them.

93.     Defendants' failure to adequately, certainly and reasonably compensate Plaintiff and the putative Class Members for the Surplus Values of properties, including the earnings and interest thereon, which Defendants have confiscated or caused property owners to cease to own and be deprived of is an actionable taking of private property (*i.e.*, the value of their property in excess of the Tax Amounts due) without just compensation, and a deprivation of Plaintiff's and the putative Class Members' rights secured under the Fifth and Fourteenth Amendments to the United States Constitution.

94.     The Surplus Value, and all earnings and interest thereon, is personal property owned by Plaintiff.

95.     Plaintiff is entitled to immediate turnover of the Surplus Value, together with the earnings and interest earned on the Surplus Value, by Defendants. *Jacobs v. United States*, 290 U.S. 13, 17 (1933) (holding that payment of "just compensation" includes the payment of any interest that has accrued on the taking from the time when the taking occurred through the date of payment).

96.     As a direct, proximate and foreseeable result of Defendants' unconstitutional failure to compensate Plaintiff and the Class as alleged, Plaintiff and putative Class Members whose property value has been taken from them have been injured and damaged and are entitled to just compensation and appropriate post-foreclosure and other injunctive relief.

## COUNT II
### TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION
### ILLINOIS CONSTITUTION ARTICLE I, § 15

28

97.     The allegations contained in the preceding paragraphs are incorporated and repeated in this paragraph and this Count is brought by Plaintiff individually and on behalf of the Class against the Defendants. Newline Holdings and Newline Financial are liable on this Count both directly, as co-participants in the joint enterprise that deprived Plaintiff and the Class of their Surplus Value, and vicariously, as principals for the acts of their agent Red Cherry Properties and/or as the alter egos of Red Cherry Properties.

98.     The Illinois State Constitution provides: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. 1970, Art. I, § 15.

99.     By its express language, the provision creates a cause of action for its violation. *Hoekstra v. Cnty. of Kankakee*, 48 Ill. App. 3d 1059, 1061 (3d Dist. 1977).

100.    For a taking of property, a plaintiff's "claim [under the Illinois Constitution] is analyzed under the same standard employed under the federal constitution." *Hampton v. Metro. Water Reclamation Dist.*, 2016 IL 119861, ¶ 16 (relying on *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998)); *see also Sharritt v. Henry*, No. 23 C 15838, 2024 WL 4524501, at *10 (N.D. Ill. Oct. 18, 2024).

101.    Defendants' retention of Plaintiff's Surplus Value, including the earnings and interest thereon, constitutes an actionable taking under Article I, § 15 of the Illinois Constitution.

102.    The Surplus Value and all earnings and interest thereon is personal property owned by Plaintiff.

103.    Plaintiff is entitled to immediate turnover of the Surplus Value, together with the earnings and interest on the Surplus Value, by Defendants.

## COUNT III
## EXCESSIVE FINES
## U.S. CONST. AMEND. VIII, XIV, AND 42 U.S.C. § 1983

104. The allegations contained in the preceding paragraphs are incorporated and repeated in this paragraph and this Count is brought by Plaintiff individually and on behalf of the Class against the Defendants. Newline Holdings and Newline Financial are liable on this Count both directly, as co-participants in the joint enterprise that deprived Plaintiff and the Class of their Surplus Value, and vicariously, as principals for the acts of their agent Red Cherry Properties and/or as the alter egos of Red Cherry Properties.

105. The Eighth Amendment to the United States Constitution prohibits the imposition of excessive fines. The Eighth Amendment is applicable to the States through the Fourteenth Amendment and applicable to Tax Buyers such as Defendants as state actors, as explained in ¶¶ 82-91, *supra*.

106. Additionally, the first and only Illinois court to consider whether the Property Tax Code could violate the Eighth Amendment since the Supreme Court decided *Tyler* unambiguously determined that the Eighth Amendment applies under the circumstances present here. *Sharritt*, 2024 WL 4524501 at *15 ("the Excessive Fines Clause applies to any statutory scheme that serv[es] in part to punish . . . [and] Illinois courts have recognized[] [that] the threat of losing property serves as a method of *coerc[ing]* tax delinquent property owners to pay their taxes, meaning that the loss of property does not *solely* [ ] serve a remedial purpose") (internal citations omitted).

107. Taking or depriving a property owner of the entire value of their property over and above any liability for Tax Amounts is punitive and an excessive fine under the Eighth Amendment to the United States Constitution. See *Tyler*, 598 U.S. at 648–50 (Gorsuch, J., concurring). Persons

30

guilty of serious crimes are often not penalized as heavily as Plaintiff has been.

108. Excessive fines are disproportionate fines. *See Timbs v. Indiana*, 586 U.S. 146, 160 (2019).

109. Here, the single offense of failure to pay property taxes, as low as a few thousand dollars, results in a sanction equivalent to the entire fair market value of a property, which reaches several hundred thousand dollars on average. This is unconstitutionally disproportionate in violation of the Eighth Amendment's excessive-fines clause.

110. Plaintiff was subject to an excessive fine when Defendants imposed the forfeiture of her Surplus Value. Plaintiff represents the overall experience of the Class: that Defendants consistently imposed forfeitures far in excess of the underlying amounts involved in the illegal act of failing to pay property taxes.

111. By failing and refusing to compensate Plaintiff and the Class for the Surplus Value of their properties in excess of their Tax Amounts owed, Defendants are engaged in assessing and collecting prohibited excessive fines that are not in accord with the seriousness of the offense nor with the objective of restoring the offender to useful citizenship.

112. As a direct, proximate and foreseeable result of Defendants' unconstitutional actions as alleged, Plaintiff and the putative Class Members have been excessively fined, injured and damaged and are entitled to compensation and appropriate post-foreclosure and other injunctive relief.

## COUNT IV
## UNJUST ENRICHMENT

113. The allegations contained in the preceding paragraphs are incorporated and repeated in this paragraph and this Count is brought by Plaintiff individually and on behalf of the Class against the Defendants. Newline Holdings and Newline Financial are liable on this Count

31

both directly, as co-participants in the joint enterprise that deprived Plaintiff and the Class of their Surplus Value, and vicariously, as principals for the acts of their agent Red Cherry Properties and/or as the alter egos of Red Cherry Properties.

114. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989).

115. All of these elements are met in this instance. Defendants secured and have retained Plaintiff's and putative Class Members' Surplus Value, either as the real properties themselves or as the proceeds from Defendants' sale of the properties to third parties.

116. Defendants were unjustly enriched when they retained Plaintiff's and putative Class Members' Surplus Value for more than the amount owing in unpaid taxes and fees on the properties at the time of the issuance of the tax deeds.

117. Plaintiff represents the overall experience of the Class: that Defendants were consistently unjustly enriched in amounts far in excess of the underlying amounts involved in the illegal act (of failing to pay property taxes).

118. The retention of the property or sale proceeds in excess of what a debtor owes is contrary to fundamental principles of equity and justice, as indicated by the fact that Illinois forbids banks to keep excess surplus from foreclosure sales and by the fact that the Bill of Rights forbids the keeping of excess surplus. 735 ILCS 5/15-1512; U.S. Const., Amend. VIII.

119. Under the doctrine of unjust enrichment, an entity that receives a benefit from another, the retention of which benefit results in inequity, may be ordered to make restitution.

32

120. Defendants retained a benefit from Plaintiff and the putative Class Members equal to the amount of their Surplus Value. Because this amount and any interest and earnings thereon are in no way related to any tax delinquency on the properties which led to their forfeiture, it is inequitable for Defendants to retain it.

**COUNT V**
**TORT OF MONEY HAD AND RECEIVED**

121. The allegations contained in the preceding paragraphs are incorporated and repeated in this paragraph and this Count is brought by Plaintiff individually and on behalf of the Class against the Defendants. Newline Holdings and Newline Financial are liable on this Count both directly, as co-participants in the joint enterprise that deprived Plaintiff and the Class of their Surplus Value, and vicariously, as principals for the acts of their agent Red Cherry Properties and/or as the alter egos of Red Cherry Properties.

122. "A cause of action for money had and received is maintainable where defendant has received money that in equity and good conscience belongs to the plaintiff." *Bueker v. Madison Cnty.*, 2016 IL App (5th) 150282, ¶ 53.

123. Defendants received and have retained Plaintiff's and putative Class Members' Surplus Value. Because this amount is in no way related to any tax delinquency on the properties which led to their forfeiture, the Surplus Value and any earnings and interest thereon in equity and good conscience belong to Plaintiff and putative Class Members.

124. Plaintiff represents the overall experience of the putative Class: that Defendants consistently received large sums of money and Surplus Value far in excess of the underlying amounts involved in the illegal act (of failing to pay property taxes) that in equity and good conscience belongs to Plaintiff and the putative Class Members.

125. Defendants are liable for the deprivation and harm caused by their unlawful

33

retention of Plaintiff's and putative Class Members' Surplus Value.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, with Plaintiff designated as representative of the Class and undersigned counsel designated as Class Counsel;

B. Award Plaintiff and the Class just compensation as determined by the Court and/or just compensation, including prejudgment interest, in an amount determined at trial or require or enjoin Defendants to compute and pay just compensation to Plaintiff and the Class and award Plaintiff and the Class appropriate relief for the excessive fines;

C. Award Plaintiff and the Class reasonable attorney's fees and costs, as provided by law;

D. Declare that the seizure, forfeiture and deprivation of Surplus Value, as alleged herein, is unlawful under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article I, § 15 of the Illinois Constitution;

E. Enjoin Defendants from seizing or causing to be seized the Surplus Value in Illinois properties without promptly and adequately providing compensation, and access to compensation, as described herein; and

F. Grant Plaintiff and the Class such further relief as may be deemed just and proper to secure and protect their right to just compensation, and protection from the violations of the U.S. and Illinois Constitutions and federal and state law described herein.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

Date: May 14, 2026                         Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Gillian C. Kimmons
**STEPHAN ZOURAS, LLC**
222 W. Adams St., Suite 2020

34

Chicago, Illinois 60606
312.233.1550
312.233.1560 $f$
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
gkimmons@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

35

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on May 14, 2026, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*